**Patricia W. Booth, Plaintiff-Appellee, v. Leonard J. Booth, Defendant-Appellant.**

**Gen. No. 54,050.**

First District, Fourth Division.

February 25, 1970.

Rehearing denied and opinion modified February 25, 1970.

1

Leonard J. Booth, pro se, of Chicago, appellant.

Rinella and Rinella, of Chicago, for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant appeals from an order (1) denying his petition to vacate and modify the order of July 24, 1968, which ordered defendant to pay additional support for college education of the children, (2) finding him in arrears in the sum of $660 which he was ordered to pay in monthly installments, and (3) ordering him to pay $350 for attorneys' fees. On appeal defendant, pro se, contends that the modification of the judgment for divorce, increasing child support payments for college education, was unreasonable and burdensome and that the $350 award for attorneys' fees was unfair and unwarranted.

Defendant married plaintiff on June 16, 1943, and they cohabited together as husband and wife until April 24, 1965. During the marriage four children were born,

Gregory, now twenty years old, Deborah, now nineteen years old, Douglas, now eighteen years old, and Janice, now seventeen years old. By agreement the divorce decree entered June 6, 1967, gave custody of the children to plaintiff. Defendant agreed to pay $500 per month alimony to plaintiff and $416.66 per month child support for the four children. The obligation of the defendant to pay child support was to abate proportionately as each child reached majority. The decree also provided that the former marital home (value estimated by defendant at $35,000 to $50,000 but subject to a mortgage of about $15,000) and furnishings be awarded to the plaintiff. The defendant further agreed to keep in full force and effect two insurance policies with face values of $10,000 and $27,000.

The defendant was also required to make yearly payments of $800 per year for five years to be applied toward the education of all of the children.[1] Under the decree the court specifically reserved for further consideration the question of liability of defendant for the payment of a college education for each child.

On April 5, 1968, plaintiff filed a petition which alleged that defendant did not designate her as primary beneficiary and the children as contingent successor beneficiaries under the $27,000 insurance policy, in violation of the divorce decree, and further requested that the court make provision for the college education of the children and provide attorneys' fees. In his answer defendant denied that he violated the divorce decree and denied that he was able to pay the costs of the college education for the children.

The court's order of July 24, 1968, on plaintiff's petition found that (1) Gregory Booth, age eighteen, minor son of the parties, was attending Hamlin Univer-

[1] This is repayment of a $4,000 fund entrusted to defendant.

3

sity in St. Paul where he was a sophomore, (2) Deborah Booth, daughter of the parties, would attain the age of majority on September 8, 1968, upon which date the liability of the defendant to pay her support would cease but that she would be attending Northern Illinois University at DeKalb in September 1968, and (3) defendant's gross income for 1968 from all sources would be approximately $24,000. The court ordered defendant to pay $165 per month toward the costs and expenses of a college education for these children and that defendant produce documentation that he had fulfilled the original divorce decree by designating plaintiff as primary and the children as contingent successor beneficiaries under the insurance policies. The order was retroactive to July 15, 1968.

Defendant filed a motion to vacate the order of July 24, 1968, which alleged in part that his uncontradicted evidence showed that plaintiff and the children were receiving the benefit of 62% of his gross 1967 income and that the order to pay the additional sums was unjust and inequitable. Plaintiff answered that the court's determination was fair.

On October 8, 1968, plaintiff filed a petition for rule to show cause alleging that defendant failed to pay the additional $165 per month, and requesting that defendant be required to pay this amount and also to pay for attorneys' fees. During the hearing on plaintiff's petition her attorney stated that the defendant had given documentary evidence that the insurance policies were in force and that, prior to her April petition, the beneficiaries had been designated in compliance with the original divorce decree. Defendant also introduced as exhibits his income tax returns for 1965, 1966 and 1967. In 1965 defendant's total income was $22,041.80 (his salary was $18,140.16 and dividends $3,901.64) and his tax was $3,295.63. In 1966 his total income was $24,-

4

490 ($19,860 salary and $4,630 dividends) and his tax was $3,830.50. In 1967 his total income was $25,096.87 ($20,691.37 salary and $4,405.50 dividends) and his tax was $3,042.45. Defendant also testified that his total 1968 income was $25,215.12.[2]

The court denied defendant's petition to vacate the order of July 24, 1968, and found defendant $660 in arrears in payment of Deborah's and Gregory's college education ($165 for September, October, November and December) which was to be paid at the rate of $22.49 per month and further ordered defendant to pay $350 attorneys' fees. It is from these orders that defendant appeals.

Defendant contends that the modification of the judgment for divorce increasing his payments for his children's college education was unreasonable and burdensome. He argues that even if the needs of the children have increased, his ability to pay has not. We are presented with the problem of how to apportion the income of a divorced husband to cover alimony payments, support for three minor children, a college education for two of the children, and to provide adequate support for his second wife and himself.

On plaintiff's rule to show cause the court found that defendant earned "somewhere around twenty-thousand dollars a year from your employment, plus five thousand dollars a year from your dividends, which made the total of twenty-five thousand dollars per year. From

---

[2] On oral argument defendant stated that his 1969 total income was $22,262.58 ($20,950 salary and $1,312.50 dividends). According to a statement obtained by plaintiff's attorney from defendant's employer, the above amounts are correct but it added that a dividend in the sum of $2,062.50 had been paid to defendant on January 15, 1970. The statement also disclosed that during 1969 defendant sold 500 shares of stock in his employer's corporation, which reduced his holdings from 1050 shares to 550 shares.

that is deducted your withholding tax, your Social Security, and of course, as to them taking out hospitalization insurance and other charges from there." The court then estimated defendant's net income at $20,000 per year.

The record shows that the figure of $20,000 net income is probably an average figure for the years 1965–1968. The dividend payments on the stock in his employer's corporation have fluctuated from $4,680 in 1966 to $1,312.50 in 1969.

At the time of the hearing (January 14, 1969) defendant's payments per year were $6,000 for alimony, $3,750 for support of three minor children (Deborah became emancipated on September 8, 1968), and insurance payments of $515. These payments plus the $800 hereinabove mentioned amounted to $11,065 per year. When we add $165 per month ($1980 for the year) allowed for college education and the $22.49 per month on the arrearage, the defendant was obligated to pay a total of $13,315 per year, leaving at most $6,685 for the defendant.

Every child should have the opportunity of going to college. However, all parents cannot afford to pay the expense thereof. Many families have insufficient incomes to endow their children with the good fortune of a college education, but their children have obtained scholarships, loans for education or have been employed so as to attain the requisite funds to finance their college education. They go to state or city universities where tuition is lower than in the private out-of-state colleges. Parents are often called upon to make sacrifices to obtain a college education for their children. But the children must also cooperate to lessen the burden to their parents in whatever way they can.

■ We believe that under all of the circumstances of this case the allowance of $165 per month for the college education of Deborah and Gregory is unreasonably

burdensome and unfair to the defendant. However, as the original divorce decree, based on agreement of the parties, did anticipate a college education for the children, we are of the opinion that defendant could and should pay for this purpose $50 per month per child after majority. This amount shall be in force until December 31, 1971; thereafter the payment shall be $100 per month per child toward expenses of college education after maturity. In reaching this conclusion we take into account the fact that the $800 annual payments will end in 1971, and that the plaintiff recently completed her college education in teaching and is employed, according to her attorney's statement during oral argument.

■ The defendant's monthly payment for a child's college education shall continue so long as he or she remains in college and it shall cease upon the attainment of an undergraduate college degree. We realize that the amount we have ordered for education is inadequate but we cannot in all fairness order payments which are beyond the ability of defendant to pay. Defendant will be paying $6,000 per year as alimony, $1,248 per year per child for those under majority whether or not they are in college, and $600 per year for college education for each child after maturity. Those in college will also share in the $4,000 educational trust fund heretofore mentioned.

During oral argument it was suggested that defendant sell his only asset—his stock in his employer's corporation—and use the proceeds for the children's education. As mentioned above, approximately half of this stock has already been sold to meet expenses, and to sell the rest would, of course, reduce defendant's income that much further. We do not consider this a feasible solution to the problem, any more than would be the sale of the family home by plaintiff.

7

The defendant also contends that the $350 award for attorneys' fees was unfair and unwarranted. In Cross v. Cross, 5 Ill2d 456, 467, 125 NE2d 488, the court found that:

> With reference to appellant's claim for attorney fees, it is evident that the court has power to allow attorney fees for services rendered in the enforcement of the decree, and for matters presented by supplemental bill to enforce rights omitted from the original bill. (Riddlesbarger v. Riddlesbarger, 341 Ill App 107.) *A fortiori*, where the decree expressly reserves the questions of property rights for future determination, the attorney fees incidental to the adjudication of that issue may be properly allowed.

In the instant case the divorce decree expressly reserved the question of the liability of defendant to pay for the children's college education. Additionally, under Ill Rev Stats 1967, c 40, § 19, the court's jurisdiction could be invoked for payments for support for educational purposes of children who had attained their majority. Therefore, the plaintiff had the right to file a supplemental petition for the children's college education and we find that the $350 award for attorneys' fees was not unreasonable and within the ability of the defendant to pay.

The order of July 24, 1968, is reversed and the cause remanded with directions that defendant be ordered to pay $50 per month for each child after majority and while enrolled as a full-time student in an undergraduate college. This order is effective as of February 25, 1970, the date of filing this opinion. After December 31, 1971, the payment shall be increased to $100 per month for each such child.

We have been advised by the parties that defendant has paid the arrearage of $660.

That part of the January 20, 1969, order awarding $350 attorneys' fees is affirmed.

Affirmed in part; reversed and remanded with directions in part.

STAMOS, P. J. and ENGLISH, J., concur.